```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                        :
SHIRLEY ROBERTS, individually and as authorized                         :
    legal representative of the estate of Wendell E.                    :
    Jordan, deceased,                                                   :
                                                                        :          13-CV-5612 (JMF)
                                Plaintiff,                              :
                                                                        :          MEMORANDUM OPINION
            -v-                                                         :              AND ORDER
                                                                        :
RAMON PEREZ et al.,                                                     :
                                                                        :
                                Defendants.                             :
                                                                        :
------------------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 08/07/2014

JESSE M. FURMAN, United States District Judge:

Acting on behalf of herself and the estate of her deceased father, Plaintiff Shirley Roberts sues Ramon Perez and Francia Rodriguez (together, the "Buyers"); their attorneys Ivonne Santos and Joseph Altman; Plaintiff's own former attorney, Mahandra Persaud (together, with the Buyers' attorneys, the "Attorney Defendants"); and ten unidentified John Doe Defendants, alleging a wide-ranging conspiracy perpetrated in connection with the sale of her father's home in the Bronx, New York.  (Am. Compl. (Docket No. 43) ¶ 1).  The Attorney Defendants now move to dismiss the Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  (Docket Nos. 43, 47, and 53).  For the reasons discussed below, the motions are granted and the case is dismissed for lack of subject-matter jurisdiction.

## BACKGROUND

The following facts are taken from the Amended Complaint, documents referenced therein, and publicly available judicial records.  *See, e.g.*, *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006).  Sometime around August 13, 2001, Wendell

Jordan contracted with the Buyers, who were represented in connection with the sale by Defendant Santos, to sell real estate located at 2272 Hampden Place, Bronx, New York (the "Property"). (Am. Compl. ¶ 9, at 4). The initial contract set the price at $245,000. (*Id.* ¶ 11, at 4; *see also* Decl. A. Michael Furman (Docket No. 48) ("Furman Decl."), Ex. B).

A signed amendment to the contract, dated October 3, 2001, raised the ostensible purchase price by adding a $15,600.00 "seller's concession." (Am. Compl. ¶¶ 12, at 4, 25; Furman Decl., Ex. D).[1] Although someone signed that amendment on behalf of "Wendell Jordan," Plaintiff alleges that Jordan was unaware of the addition of the seller's concession because it was not disclosed and because his attorney, Defendant Persaud, did not advise him of the alterations to the contract. (Am. Compl. ¶ 14). Plaintiff alleges that Jordan never agreed to the version of the contract that included the seller's concession. (*Id.* ¶¶ 19-20).

On October 3, 2001, the date of both the closing and the contractual amendment, Jordan spoke with an attorney named Michael Fingerit, who Plaintiff alleges told Jordan that the transaction was fraudulent. (*Id.* ¶¶ 29-30). After hearing Fingerit's assessment of the seller's concession by telephone, Jordan "aborted the closing, [and] collected his file and all closing documents," thus terminating the deal. (*Id.* ¶¶ 29-31).

On January 14, 2002, the Buyers — represented by Defendant Altman — sued Jordan in Bronx County Supreme Court for specific performance of the real-estate contract. (*Id.* ¶ 33; *see also* Furman Decl., Ex. G). The verified complaint in that action was served on Jordan at the Property (and on both Fingerit and Persaud as well). (*See* Am. Compl. ¶¶ 33-34; *accord* Furman Decl., Ex. G, at 6). Jordan answered the complaint, but Plaintiff alleges that "neither [Jordan]

---

[1]   The seller's concession was added to the purchase price, as well as the mortgage, and was paid back to the Buyers and their agents, presumably to cover the costs associated with closing. (*See* Am. Compl. ¶¶ 16, 18, 27).

nor his attorney were served with any other documents in the case" and therefore "assumed that the action had been abandoned by [the Buyers]." (Am. Compl. ¶ 34). On July 7, 2003, notwithstanding the ongoing pendency of the state court action,[2] Jordan purported to convey title to the Property to his daughter, Plaintiff here. (*Id.* ¶ 35).

Default judgment was entered against Jordan in the state court action in 2005. (*Id.* ¶ 36; *see also* Furman Decl., Ex. H). Thereafter, Plaintiff timely intervened and moved to vacate the default judgment on behalf of her father. (Am. Compl. ¶ 37; *see also* Furman Decl., Ex. I). That relief was eventually granted by the Appellate Division, First Department (Am. Compl. ¶ 39), and the case was remanded to the Supreme Court for a trial on "whether there was mutual assent between the Buyer and the Seller" — that is, on the question whether the amended contract was enforceable against Jordan and his assignees. (*Id.* ¶ 40).

The Honorable Maryann Brigantti-Hughes presided over the ensuing jury trial and, on October 2, 2009, entered judgment in accordance with the jury's verdict in favor of the Buyers.[3] (*Id.* ¶ 43; *see also* Furman Decl., Ex. M). Justice Brigantti-Hughes ordered Jordan to abide by the amended contract and to close title, sign the deed, and transfer the necessary sale documents. (Am. Compl. ¶ 43). Since entry of the judgment after trial, Buyers, through their counsel Defendant Altman, have attempted to enforce the judgment via orders to show cause. (*Id.* ¶¶ 44-45). Plaintiff alleges that such attempts have continued "incessantly" since an order to show cause was filed on June 24, 2013. (*Id.* ¶ 44).

---

[2]  Plaintiff alleges that no Notice of Pendency had been filed or served upon Jordan at the time he conveyed title to Plaintiff. (Am. Compl. ¶ 35).

[3]  Plaintiff appealed the judgment (*see* Furman Decl., Ex. N), but the appeal was dismissed (Furman Decl., Ex. O).

3

Plaintiff now invokes the jurisdiction of this Court to remedy the wrong caused by an alleged conspiracy among the Buyers, the Defendant Attorneys, and various John and Jane Does. The object of the alleged conspiracy — which Plaintiff alleges violates (1) the Real Estate Settlement Procedures Act, Title 12, United States Code, Section 2607 *et seq.*; and (2) the Racketeer Influence and Corrupt Organizations Act, Title 18, United States Code, Sections 1961 and 1962 — was to defraud Plaintiff, her now-deceased father, and the New York courts. (Am. Compl. ¶¶ 47, 52-95). Plaintiff also brings state-law claims sounding in fraudulent conveyance, and — against Defendant Persaud — legal malpractice and breach of fiduciary duty. (Am. Compl. ¶¶ 96-110). Plaintiff seeks $400,000 in compensatory damages, $1,200,000 in punitive damages, and a declaratory judgment stating that Defendants "violated Federal Law." (*Id.* 20).

## DISCUSSION

The Attorney Defendants argue that the Court lacks subject-matter jurisdiction by virtue of the *Rooker-Feldman* doctrine, which stands for "the clear principle that federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments." *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 84 (2005). (Persaud Mem. (Docket No. 55) 4-6; Mem. Law Supp. Def. Joseph Altman's Mot. To Dismiss (Docket No. 51) ("Altman Mem.") 20-22; Aff. Supp. Def. Ivonne Santos Mot. To Dismiss Pl.'s "Amended" Compl. And Supp. Def.' Ivonne Santos Req. Sanctions Pursuant FRCP Rule 11 And 28 U.S.C. § 1927 [sic] (Docket No. 59) ("Santos Mem.") ¶¶ 26, 29). More specifically, the *Rooker-Feldman* doctrine deprives federal district courts of subject-matter jurisdiction when four conditions are met: (1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state-court judgment; (3) the plaintiff's complaint "invite[s] district court review and rejection of that judgment"; and (4) the state judgment was rendered before the filing of the federal complaint.

*Hoblock*, 422 F.3d at 85 (alterations and internal quotation marks omitted).  The first and fourth requirements are "procedural"; the second and third are "substantive."  *Id.*

Here, the two procedural requirements are plainly met.  Plaintiff lost in state court (Am. Compl. ¶ 43; Furman Decl., Exs. M, N, O), and that loss was well before Plaintiff's federal complaint was filed: the Appellate Division dismissed Plaintiff's appeal on June 7, 2012, and she did not file her original Complaint here until August 12, 2013.  (Furman Decl., Ex. O; Docket No. 1).  Plaintiff argues that the *Rooker-Feldman* doctrine does not bar her claims here because the Attorney Defendants were not parties to the state-court action.  (Pl.'s Omnibus Mem. Law Opp'n Defs.' Joseph Altman's, Mahandra Persaud's, Ivonne Santos' Mots. To Dismiss First Am. Compl. (Docket No. 69) ("Pl.'s Mem.") 9).  In support of that argument, Plaintiff relies on *Lance v. Dennis*, 546 U.S. 459 (2006) (per curiam), for the proposition that *Rooker-Feldman* does not apply "in situations, as here, where the party in Federal Court was not a party to the underlying state-court proceeding."  (Pl.'s Mem. 9).  But *Lance* addressed the question of whether a *plaintiff* may be barred by a different party's loss in state court.  546 U.S. at 460.  This case presents the entirely different circumstance in which Plaintiff, having lost in state court, names additional parties.  Such gamesmanship is not enough to get around the *Rooker-Feldman* bar.

The first substantive requirement — namely, that the plaintiff complains of injuries caused by the state-court judgment — is also met here, as Plaintiff's alleged injury was caused solely by the state-court judgment.  Plaintiff's Amended Complaint seeks to redress injuries that are a direct result of the state-court judgment and subsequent attempts to enforce it.  Although the Amended Complaint purports to complain of injuries caused by Defendants' actions dating back to 2001, such artful pleading is insufficient to bypass *Rooker-Feldman*.  *See, e.g.*, *Hoblock*, 422 F.3d at 88 ("Can a federal plaintiff avoid *Rooker-Feldman* simply by clever pleading — by

alleging that actions taken pursuant to a court order violate his rights without ever challenging the court order itself? Surely not."). "[A] federal suit complains of injury from a state-court judgment . . . when [a] third party's actions are produced by a state-court judgment . . . ." *Id.* Read as a whole, Plaintiff's Amended Complaint plainly seeks to remedy harm caused by the state-court judgment ordering her to yield her title to the Buyers. That is evident from the requested compensatory damages (Am. Compl. 20), the detail with which Plaintiff complains of the state-court proceedings (*id.* ¶¶ 33-45, 49-50), and the fact that Plaintiff specifically names Defendant Altman, the Buyers' state-court litigation counsel.

Most telling for purposes of *Rooker-Feldman*'s causation requirement, Plaintiff suffered no tangible injuries prior to the issuance of the state-court judgment. *See Anctil v. Ally Fin., Inc.*, — F. Supp. 2d —, No. 12-CV-8572 (CS), 2014 WL 516686, at *5 (S.D.N.Y. Feb. 10, 2014) ("[T]hat the Defendants' misconduct may have predated the [state-court] proceedings does not change the fact that it was the [state-court] judgments . . . that caused the loss of the homes."). That is, Plaintiff had full enjoyment of the Property, and neither she nor her deceased father had been forced to pay the Buyers a dime prior to the state-court proceedings. It was not until the 2005 default judgment that either Plaintiff or Jordan owed anybody anything (*see* Am. Compl. ¶¶ 35-36), and the only source of Plaintiff's current injuries is the as-yet-unsatisfied judgment made final on June 7, 2012 (*see* Furman Decl., Ex. O). Put simply, if the state-court judgment were to disappear, Plaintiff would presumably retain the Property and would therefore have no injury. Accordingly, the Court concludes that her injury is caused by the state-court judgment.

Finally, Plaintiff's allegations "invite district court review and rejection of" the state-court judgment. Plaintiff argues that she raises an issue here that was not presented to the state court — namely, that the state-court judgment was procured by fraud — and that such claims are

6

"independent" for *Rooker-Feldman* purposes.  (Pl.'s Mem. 7-9).  It is well established, however, that "a federal plaintiff cannot escape the *Rooker-Feldman* bar simply by relying on a legal theory not raised in state court."  *Hoblock*, 422 F.3d at 87.[4]  And courts in this District have consistently held that claims that a state-court judgment was fraudulently procured are subject to *Rooker-Feldman*.  *See Anctil*, 2014 WL 516686, at *7; *Millman v. PNC Bank Nat'l Ass'n*, No. 97-CV-3097 (HB), 1998 WL 635548, at *3 (S.D.N.Y. Sept. 16, 1998) (collecting cases).  Moreover, while the Second Circuit has not explicitly ruled on the issue, it has indicated that it would be unwilling to recognize a fraud exception to *Rooker-Feldman*.  *See, e.g.*, *Kropelnicki v. Siegel*, 290 F.3d 118, 128 (2d Cir. 2002); *Castiglione v. Papa*, 423 F. App'x 10 (2d Cir. 2011) (summary order) (affirming the application of *Rooker-Feldman* to an attempt to collaterally attack an allegedly fraudulently obtained state-court judgment).[5]

---

[4]  The Supreme Court's opinion in *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005), cited by Plaintiff (Pl.'s Mem. 6-7), is not to the contrary.  That case held that *Rooker-Feldman* does not bar claims that incidentally call into question the validity of a state-court judgment, but did nothing to disturb the doctrine's longstanding application to federal suits that seek damages to remedy alleged wrongs created by state courts.  *See Exxon Mobil*, 544 U.S. at 291-92; *accord Anctil*, 2014 WL 516686, at *6 ("I see nothing in the *Exxon Mobil* decision that would affect the presence or absence of an exception to *Rooker-Feldman* for allegations of fraud on the state court in procuring the prior judgment.").

[5]  Some courts outside this District have recognized a fraudulent-procurement exception to *Rooker-Feldman*, *see, e.g.*, *Goddard v. Citibank, NA*, No. 04-CV-5317 (NGG), 2006 WL 842925, at *5 (E.D.N.Y. Mar. 27, 2006) (citing *In re Sun Valley Foods Co.*, 801 F.2d 186, 189 (6th Cir. 1986)), but many of those courts have done so based on reasoning derived not from *Rooker* or *Feldman* but from cases addressing *res judicata*, a conceptually distinct doctrine with different requirements but occasionally similar results.  *See id.* at *6-8; *see also West v. Evergreen Highlands Ass'n*, 213 F. App'x 670, 674 n.3 (10th Cir. 2007) (unpublished) ("State rules of procedure provide various means to attack a wrongfully obtained judgment.  Construing *Rooker-Feldman* to permit federal reconsideration and nullification of state judgments on grounds that could have been pursued in state court arguably allows under the rubric of collateral attack just another mechanism for lower federal court review unauthorized under [28 U.S.C.] § 1257.").  In any event, the Court declines to follow those courts that have recognized a fraudulent-procurement exception, and adopts the majority rule of courts in this Circuit.

7

In short, Plaintiff's suit is "*in substance*," an "appeal[] from [a] state-court judgment[]." *Hoblock*, 422 F.3d at 84 (emphasis added). The question of whether the contract of sale for the Property was valid and enforceable was tried, and decided, in state court, and Plaintiff's central claims in this suit — namely, that the contract was fraudulent and that Defendants continued to perpetrate their fraud through the state-court proceedings — plainly invites review and rejection of the state court's judgment. Under *Rooker-Feldman*, this Court therefore lacks subject-matter jurisdiction to review Plaintiff's claims, which are inextricably intertwined with the extant state-court judgment against her. If Plaintiff wishes to argue that the judgments against her were procured through fraud or otherwise wrong, "*Rooker-Feldman* and 28 U.S.C. § 1257 require [her] to do so in the state courts that rendered those judgments." *Anctil*, 2014 WL 516686, at *8.

## CONCLUSION

For the foregoing reasons, the Court concludes that it lacks subject-matter jurisdiction, and the Attorney Defendants' motions are GRANTED. Further, given the lack of subject-matter jurisdiction, the case must be dismissed as to *all* Defendants. In light of the Court's holding, the Court does not need to (and, indeed, should not) reach any of Defendants' arguments on the merits. The Court denies Defendant Santos's request for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure (Santos Mem. 17-23), as Santos failed to comply with the requirement of Rule 11(c)(2) that any motion for sanctions be "made separately from any other motion." *See also Williamson v. Recovery Ltd. P'ship*, 542 F.3d 43, 51-52 (2d Cir. 2008).

The Clerk of Court is directed to terminate Docket Nos. 47, 53, 57 and to close the case.

SO ORDERED.

Date: August 7, 2014
New York, New York

JESSE M. FURMAN
United States District Judge